IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>LUIS MEZA-GALVEZ,<br><br>        Defendant. | 8:13-CR-244<br><br>TENTATIVE FINDINGS |

The Court has received the revised presentence investigation report (PSR) in this case. Both parties have objected to the PSR (filings 244 and 247), and the defendant has moved for a downward variance. Filing 248.

IT IS ORDERED:

1.  The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

    (d) impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f)     in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. Meza-Galvez made several objections to the PSR. First, he objects to the PSR's inclusion of a two-level enhancement for possession of a firearm in connection with a drug offense. U.S.S.G. § 2D1.1(b)(1); PSR ¶ 49 & p. 21; filing 247 at ¶ 2. On the day Meza-Galvez was arrested, the police had gone to an apartment in Omaha to conduct a "knock and talk." Meza-Galvez, who was alone in the apartment at the time, answered the door and allowed the police inside, whereupon they observed a large amount of cash on a table and a notebook that they believed to be a drug ledger. PSR ¶¶ 28-30. Meza-Galvez admitted that there were drugs and a handgun in the apartment, but refused to consent to a search, claiming that the apartment did not belong to him. He stated that he had been staying in the apartment for the past 2 months, and that his sole role in the drug operation was to watch over the methamphetamine for his alleged co-conspirator, Jorge Munoz-Ramon. PSR ¶ 35. The police thereafter obtained a search warrant and discovered, among other things, over 5 pounds of methamphetamine, large amounts of cash, and various drug paraphernalia such as baggies and a digital scale. Additionally, in the kitchen, the police discovered another digital scale, and inside a drawer, a loaded handgun, along with 44 rounds of ammunition. PSR ¶¶ 36-42.

For § 2D1.1(b)(1) to apply, the government must prove by a preponderance of the evidence that (1) the weapon was possessed; and (2) it was not clearly improbable that the weapon was connected to the drug offense. *United States v. Garcia*, 703 F.3d 471, 476 (8th Cir. 2013). Actual or constructive possession will suffice. *United States v. Dunn*, 723 F.3d 919, 929 (8th Cir. 2013). So, the government must show that Meza-Galvez exercised ownership, dominion, or control over either the firearm or the premises in which it was found. *Id.* "If possession is established, the enhancement applies 'if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *Id.* (quoting U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A)). The government proves a connection between the firearm and the offense by showing the existence of a temporal and spatial relation between the

weapon, the drug trafficking activity, and the defendant. *United States v. Young*, 689 F.3d 941, 946 (8th Cir. 2012). Although the mere presence of a firearm is not enough, the government need not show that the defendant used or even touched the firearm. *Garcia*, 703 F.3d at 476.

The government has demonstrated a connection between the firearm and the drug conspiracy. The firearm was found in the same apartment where large amounts of cash and methamphetamine were being stashed. *See, e.g., id.* at 477. And the firearm, which was loaded, was stored in a readily accessible location such that it could be used to protect that stash. *See Young*, 689 F.3d at 946. At this time, however, the government has not shown that Meza-Galvez personally possessed the firearm. Nor, on the current record, has the government established constructive possession.

Constructive possession of a firearm is shown when a person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. *United States v. Chantharath*, 705 F.3d 295, 304 (8th Cir. 2013). There is evidence that may support a finding that Meza-Galvez had dominion over the apartment. He had been living there for 2 months and was trusted to watch over large amounts of methamphetamine and money stashed there. But showing that Meza-Galvez had some control over the apartment will not suffice to show constructive possession of the firearm, because Meza-Galvez was neither the sole occupant of the apartment, nor the only person who had dominion or control over it. His co-defendant, Luis Vallejo, had been staying at the apartment for the previous 8 to 10 days. PSR at ¶ 36. And while Munoz-Ramon claimed not to reside at the apartment, the lease was held in his name. PSR at ¶¶ 33, 37.

Where there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession. *United States v. Wright*, 739 F.3d 1160, 1168 (8th Cir. 2014). The firearm was in a kitchen drawer—a location equally accessible to Vallejo and Munoz-Ramon. This raises the inference that any one or all of the co-conspirators possessed the firearm. *United States v. Wajda*, 810 F.2d 754, 762 (8th Cir. 1987). In such cases, there must be some additional nexus linking the specific defendant to the firearm. *Wright*, 739 F.3d at 1168. On the current record, no such nexus has been

- 3 -

established: there was nothing about the firearm or the drawer in which it was found to tie it to Meza-Galvez, as opposed to his co-conspirators.

However, § 2D1.1(b)(1) may also apply based upon a co-conspirator's possession of a firearm. *United States v. Brewer*, 624 F.3d 900, 907-08 (8th Cir. 2010). For this approach to apply, it must have been reasonably foreseeable to the defendant that the co-conspirator would have possessed a weapon. *Id*. The government has gone one better in this case: Meza-Galvez admitted that he knew the handgun was in the apartment. PSR ¶ 35. There is nothing to suggest the firearm belonged to any outsider. So, the weapon either belonged to him or one of his co-conspirators (or was jointly possessed). And in each of these scenarios, the government has established constructive possession by Meza-Galvez. Thus, the Court's tentative finding is that the firearm enhancement should apply.

Next, Meza-Galvez objects to the finding in the PSR that he is ineligible for safety valve relief. PSR ¶ 14, 82; filing 247 at ¶ 2. If a defendant meets certain criteria set forth in 18 U.S.C. § 3553(f)(1)–(5), he may be sentenced without regard to any statutory minimum sentence, and also receive an additional two-level downward adjustment. 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(16) & 5C1.2. Only one of those criteria is at issue here: Meza-Galvez must demonstrate, by a preponderance of the evidence, that he did not "possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2); *United States* v. Garcia, 675 F.3d 1091, 1094 (8th Cir. 2012).

With one important exception, the same basic test is used to determine whether a defendant possessed a firearm in connection with his offense for purposes of both the possession enhancement under U.S.S.G. § 2D1.1(b)(1) and safety-valve eligibility. In both contexts, actual or constructive possession will suffice for both. *United States v. Jackson*, 552 F.3d 908, 909–10 (8th Cir. 2009). So, the defendant must demonstrate both that (1) he did not possess the weapon and (2) it is clearly improbable that the weapon was possessed in connection with the offense. *United States v. Moore*, 184 F.3d 790, 795 (8th Cir. 1999). As to these points, the Court's tentative findings remain the same as above. While the weapon was possessed in connection with the drug

- 4 -

conspiracy, the current record does not show that Meza-Galvez was the one who possessed it.

The key difference between possession for purposes of U.S.S.G § 2D1.1(b)(1) and for safety valve purposes relates to the extent to which a defendant may be held accountable for a co-conspirator's possession. For safety valve purposes, possession of a weapon by a co-conspirator does not render the defendant ineligible for safety valve relief unless the government shows that the defendant induced the co-conspirator's possession. *United States v. Delgado-Paz*, 506 F.3d 652, 655–56 (8th Cir. 2007). As it stands, there is no evidence that Meza-Galvez induced another to possess the firearm. Therefore, the Court tentatively finds that Meza-Galvez is eligible for safety valve relief.[1]

Meza-Galvez next argues that he is entitled to a reduction in his offense level based on his role in the offense, pursuant to U.S.S.G. § 3B1.2. Filing 247 at ¶ 3. That guideline provides for a two-level decrease in the offense level if the defendant was a "minor participant" in their offense, such that he was "substantially less culpable than the average participant" in the offense charged. U.S.S.G. § 3B1.2 cmt. nn.1 & 3(A). The propriety of an adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense. *United States v. Rodriguez-Ramos*, 663 F.3d 356, 366 (8th Cir. 2011). Even if a defendant is less culpable than other participants, an adjustment is not warranted if he was nonetheless "deeply involved" in the offense. *Id.* at 366-67. So, to be entitled to an adjustment, the defendant must prove that he was a minor participant in comparison to the other participants and by comparison with the offense for which he was held accountable. *Id.* at 367. The Court's tentative finding is that Meza-Galvez is not entitled to a mitigating role adjustment.

There is conflicting evidence of Meza-Galvez's role in the conspiracy. When Meza-Galvez was arrested, he told police that Munoz-Ramon was responsible for dealing the methamphetamine and was his boss. And he

---

[1] To be eligible for safety valve relief, Meza-Galvez must also, no later than the sentencing hearing, truthfully provide the government with all information and evidence he has concerning the conspiracy. *See* 18 U.S.C. § 3553(f). The record does not disclose whether Meza-Galvez has yet satisfied this criteria. Assuming that he does, he would potentially be entitled to safety valve relief.

claimed that his sole role was to watch over the methamphetamine (and the money) at the apartment. PSR ¶ 35. But Munoz-Ramon told police a very different story: that Meza-Galvez was his supplier, that Meza-Galvez had provided him with 2.5 pounds of meth on three occasions, that he was in debt to Meza-Galvez for $17,000, and that he had rented the apartment at Meza-Galvez's direction. PSR ¶ 33.

As it stands, even if Meza-Galvez's version of the facts is credited, he was nonetheless deeply involved in the offense. He has admitted that he was responsible for watching over a large stash of drugs and money, and that he had been doing so for 2 months. This demonstrates that he was a trusted member of the conspiracy, and it is inconsistent with a claim that he was substantially less culpable than his co-conspirators. *See United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003).

Next, both parties have objected to the PSR on the grounds that it assigns a higher base offense level than agreed to in their Rule 11(c)(1)(B) plea agreement. Filings 244 and 247. That agreement provided that Meza-Galvez should be held responsible for at least 1.5 kilograms of actual methamphetamine, resulting in a base offense level of 36. Filing 194 at 3. But, as the probation officer noted, the parties erred: the base offense level for that quantity of methamphetamine is actually 38. U.S.S.G. § 2D1.1(c)(1); PSR at ¶¶ 40, 48, 82 & pp. 20-21. The Court has deferred acceptance of the plea agreement until sentencing and will resolve this matter at that time. Filing 237.

The Court turns finally to Meza-Galvez's motion for a variance. Filing 248. In January 2014, the U.S. Sentencing Commission proposed an across-the-board, two-level reduction for the base offense levels associated with the Drug Quantity Table of U.S.S.G. § 2D1.1.[2] In response, the Department of Justice has directed its prosecutors not to object if defendants currently set for sentencing seek to have the

---

[2] *See* News Release, U.S.S.C., *U.S. Sentencing Commission Seeks Comment on Potential Reduction to Drug Trafficking Sentences* (January 9, 2014), http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20140109_Press_Release.pdf (last visited May 5, 2014). The Commission has since adopted this amendment and submitted it to Congress for approval. *See* U.S.S.C., *Amendments to the Sentencing Guidelines* 13-25 (April 30, 2014), http://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20140430_Amendments.pdf.

proposed guidelines applied.[3] This policy is contingent upon the defendant stipulating that he will not seek a later reduction if the proposed amendment is adopted and made retroactive. PSR ¶ 97. Meza-Galvez has moved for such a variance, and the Court will resolve this matter at sentencing.

3.  Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4.  If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.  Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.  Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 5th day of May, 2014.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
United States District Judge

---

[3] *See* News Release, Dep't of Justice, *Attorney General Holder Urges Changes in Federal Sentencing Guidelines to Reserve Harshest Penalties for Most Serious Drug Traffickers*, http://www.justice.gov/opa/pr/2014/March/14-ag-263.html.